PRINCE A. STAFFORD

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Somerset.    Opinion May 22, 1900.

*Negligence.    New Trial.*

In an action for negligence, where the jury returned a verdict for the plaintiff, it appeared that the issues between the parties were all questions of fact for the jury and no doubtful questions of law were involved. The well-settled principles of law applicable to the respective rights and duties of the parties, as master and servant, were carefully given by the presiding justice and in such a manner as to fully protect the rights of the defendants.

While the court might possibly have drawn inferences and conclusions from the facts different than a jury, *held;* that the questions were such that reasonable and fair-minded men might differ about them, and that accordingly the verdict should not be set aside.

ON MOTION BY DEFENDANT.

This was an action on the case to recover for personal injuries received by the plaintiff while in the employ of the defendant company as a locomotive fireman. It was tried at the March term in Somerset county, and the jury returned a verdict of $3,391.25. The defendant thereupon filed a motion to set aside the verdict.

From the evidence it appeared that on April 3, 1895, the plaintiff was employed as a fireman on an engine which was hauling a freight train out of Bangor. After proceeding about five or six miles from Bangor on the run toward Waterville, one of the sight-feed glasses in a lubricating cup, burst or exploded and a piece of glass was driven into the socket of his right eye just below the eyeball. In consequence of the injury thus received, he was unable to work for about one month, but then returned to his work and after firing for two or three weeks he was placed in charge of an engine as an engineer and ran regularly from that time until some time in January, 1898, when he was directed to have his eyes examined by Dr. Holt of Portland, and it was found that the

vision of his right eye was imperfect and that it would be unsafe for him and for the public to be employed longer as an engineer. He was consequently dismissed from that position although another position was offered him by the railroad company. He did not accept further employment from the defendant company, and August 12, 1898, brought this action to recover for the injury to his eye.

He continued in the employ of the defendant company for a period of two years and a half after the injury and during this time, with the exception of the first two or three weeks, was employed as a locomotive engineer and ran upon regular trains. He claimed that his eye troubled him a great deal and grew gradually worse; and after this action was brought, under the advice of his physician, he went to a hospital and had the injured eye removed.

The lubricating cup is known as the Siebert cup and was placed upon the left side of the boiler-head in the cab at a distance of about two feet above the head of the fireman, as he would stand in the cab. Its use is to oil automatically the cylinders of the locomotive while the locomotive is in motion. For that purpose two pipes known as the tallow pipes extend from the cup outside the boiler to the cylinders on either side. A pipe connects a condenser on top of the cup with the boiler. The cup is partially filled with water at first so that it shall stand about an inch in the sight-feed glass, then oil is poured in, the valve controlling the pipe which connects the condenser on top of the cup with the boiler is then open, the steam enters the condenser and is there condensed into water, which flows from the condenser into the cup and for each drop of water admitted into the cup one drop of oil is forced out. The oil rises drop by drop through the water in this sight-feed glass on either side and passes out through the tallow pipes to the cylinders, the pressure of steam in the steam chest being overcome by the boiler pressure, all of which is exerted upon this cup.

The plaintiff in his writ charged that the lubricating cup, the glass in which broke and caused the injury to the plaintiff, was unsuitable, improper and defective in this particular; that the

sight-feed glasses, through which the oil passed to reach the pipes leading to the cylinder, were not properly shielded, guarded, and protected, so that if they burst, the flying particles of glass would be prevented from doing injury to the plaintiff and his fellow workmen. No part of the cup was made of glass except the two sight-feed tubes one on either side.

The defendant contended that it was not liable to the plaintiff for the injuries sustained by him, because it had exercised ordinary care and foresight in equipping its engine with this cup; that it was of a standard pattern made by reputable manufacturers and in general use on the railroads of New England, without any shields or guards around the sight-feed glasses; that none were at that time provided by the manufacturers; that it had no knowledge that these glasses would explode with violence so that pieces of glass would be hurled with sufficient force to do injury to anyone; that all the means of knowledge which it had in regard to the liability of an explosion of this character were equally open to the plaintiff; that whatever danger attended the use of this cup as it was used upon the engine upon which the plaintiff was employed, was incidental to the plaintiff's employment as a fireman upon this locomotive engine; that all the danger connected with its use without shields or guards about the sight-feed glasses was obvious and open to the observation of a man of the age, experience, and intelligence of the plaintiff, or could have been discovered by him by the exercise of ordinary care and attention; that by continuing in the employ of the company without objection he assumed the risk of all danger by reason of the failure of the defendant to guard or shield these glass tubes, even if such a failure constituted negligence.

*Forrest Goodwin*, for plaintiff.

*Charles F. Johnson*, for defendant.

SITTING: WISWELL, C. J., EMERY, HASKELL, STROUT, SAVAGE, FOGLER, JJ.

WISWELL, C. J.    After a careful examination and consideration of this case we are not satisfied that the verdict for the plaintiff for

$3391.25 was so manifestly wrong as to warrant its being set aside.

The plaintiff was a locomotive fireman in the defendant's employ. While engaged in the performance of his duties as such he sustained serious injury, finally resulting in the loss of an eye, by the explosion of a glass tube, connected with an automatic lubricating cup attached to the boiler head.

His contention is that the cup as used and located was unnecessarily dangerous; that these glass tubes were so liable to explode and had so frequently exploded that the danger was, or should have been, known by the employer; that this danger might have been easily avoided by the use of some shield or guard about the glass tube, which, he claims, was entirely practicable without in any way destroying the efficiency of the lubricating cup, and that such shields were in use at the time of the accident and before. He further claims that this risk was not assumed by him, because the danger was not one incidental to his employment, and was not known by him previous to the accident.

These were all questions of fact for the jury. There were no doubtful questions of law involved. The well settled principles of law applicable to the respective rights and duties of the parties, as master and servant, were carefully given by the presiding justice, and in such a manner as to fully protect the rights of the defendant.

There was considerable evidence in support of the plaintiff's contentions; in fact, the controversy between the parties and their counsel was more as to the conclusions and inferences to be drawn from the facts, than as to the facts themselves.

It is quite possible that we would not have drawn the same inferences, or come to the same conclusions as did the jury upon some of these matters. But we think that these were questions about which reasonable and fairminded men might differ, and consequently do not consider that the verdict should be set aside.

*Motion overruled.*